# United States Court of Appeals
## For the First Circuit

No. 01-1856

DAVID ALMANZAR,

Petitioner, Appellant,

v.

MICHAEL T. MALONEY, COMMISSIONER OF DEPARTMENT OF CORRECTIONS,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

Robert O. Berger for appellant.
William J. Meade, Assistant Attorney General, with whom Thomas F.
Reilly, Attorney General, was on brief, for appellee.

February 25, 2002

**STAHL, Senior Circuit Judge**.  Appellant David Almanzar ("Petitioner") appeals from the denial of his petition for a writ of habeas corpus.  Specifically, Almanzar argues that he is entitled to a new trial because his jury-waived trial was, in effect, a guilty plea, and as such, the judge's colloquy failed to satisfy minimum constitutional requirements.  We affirm.

## I.

In March 1995, Almanzar was indicted for trafficking in 200 or more grams of cocaine and for possession of heroin with the intent to distribute.  He challenged the constitutionality of the search yielding the narcotics, but his pretrial motions to suppress were denied in October 1995, with the court's written findings of fact and conclusions of law filed two months later.  Petitioner then sought to have the indictment dismissed on the basis of double jeopardy, but the court rejected this argument as well.  After these adverse rulings, in April 1996 Petitioner waived his right to a jury and opted instead for a bench trial before a Superior Court judge.

Because Petitioner challenges the constitutional sufficiency of the April proceeding, we shall describe it in detail.  At the outset, the prosecutor explained to the court that Petitioner desired a jury-waived trial with stipulated facts, and that if he were found guilty after that proceeding, then the parties would present the court with their agreed-upon recommendation for sentencing.  The court then

-3-

conducted a waiver of jury trial colloquy with Petitioner through an interpreter. Specifically, the judge asked Petitioner about his age, his level of education, and his mental fitness. She inquired as to whether he was under the influence of drugs or alcohol, and whether he knew the date and time. She asked Petitioner if he understood the nature of the charges against him, explained the elements of each count, and informed Petitioner that the government would need to prove these elements beyond a reasonable doubt. She informed Petitioner that he was entitled to a jury of his peers and that their verdict would have to be unanimous. The judge explained that jurors make fact determinations and the judge makes rulings of law; however, if Petitioner waived a jury trial, she would perform both functions. After determining that Petitioner had discussed these matters with his attorney and was satisfied with his counsel's advice, the judge asked Petitioner whether he had discussed the possible range of penalties with his attorney. She inquired as to whether anyone was forcing him to waive a jury trial or whether any promises or threats had been made against him. Upon completing her examination, the judge found that Petitioner was waiving his right to a jury trial voluntarily, intelligently and with knowledge of the consequences. She further stated that Petitioner was aware of the differences between a jury and a bench trial, had not been coerced or improperly influenced in his

decision and was presently capable of rational judgment. Accordingly, she accepted his waiver of a jury trial.

After this exchange, Petitioner's counsel told the court that his client was willing to stipulate to the facts that the prosecutor would read into the record, and that the parties had agreed, for purposes of sentencing, to reduce the charge from an amount of cocaine in excess of 200 grams to an amount in excess of 100 grams but not greater than 200 grams. At this point, the judge said, "This is not a guilty plea. It should be absolutely clear to this defendant that he is not pleading guilty. Does the defendant understand that he is not being asked to plead guilty?" Almanzar responded, "Yes, of course."

The prosecutor then read the state's evidence into the record. Petitioner agreed that this would be the evidence that the Commonwealth would present, and his counsel concurred. The judge then found that there was sufficient evidence to warrant guilty findings on both counts of the indictment, and adjudged Petitioner guilty of the two charges. She accepted the parties' agreement regarding the amount of cocaine, and then asked counsel again whether his client understood that he was not agreeing to the truth of anything that had been said by the government. Counsel reassured the court that he was satisfied that his client understood his different options and had chosen a stipulated facts trial in order to preserve his right of appeal on certain prior motions. At this point, the judge asked Petitioner whether he

understood everything that had gone on during these proceedings, and Petitioner said that he did. When the judge asked Petitioner if there was anything that he wanted to ask her, he inquired as to whether he could ask his attorney something in private. The judge granted this request. After conferring with his client, Petitioner's attorney informed the court that Almanzar had "questioned counsel regarding other possible evidence in the case and I have explained to him," at which point the judge cut him off, saying, "Okay. You don't have to tell us what you said at all." Then, turning to Petitioner, the judge asked Petitioner whether he had sufficient time to discuss any questions he had with his attorney, to which he responded, "Yes, Madam." The court asked Petitioner again whether there was anything that he did not understand about what had happened during that morning's proceedings. To this, Petitioner said, "No, everything is all right." Satisfied with his responses and having already found Petitioner guilty, the court proceeded to sentencing.

Petitioner timely appealed, challenging both the constitutional sufficiency of the proceedings before the trial court and the denial of his motions to suppress.[1] On December 15, 1998, the Massachusetts Appeals Court summarily affirmed Petitioner's convictions

---

[1] In addition to motions to suppress regarding the physical evidence (i.e., the drugs), Petitioner also had filed a motion to exclude certain statements that he had made to the police. According to the record, Petitioner did not challenge this adverse ruling on appeal.

-6-

in an unpublished opinion.  Commonwealth v. Almanzar, 705 N.E.2d 1178 (Mass. App. Ct. 1998) (unpublished table decision).  The Massachusetts Supreme Judicial Court denied Petitioner's application for leave to obtain further appellate review.  Commonwealth v. Almanzar, 707 N.E.2d 1079 (Mass. 1999) (unpublished table decision).

On November 22, 1999, Petitioner filed a petition for writ of habeas corpus, arguing that the trial judge failed to ensure that he had voluntarily and intelligently waived his right to a trial by jury because she did not inform him that he had the right to confront his accusers, to compel the attendance of witnesses, and to present evidence in his defense.  The district court denied the writ on May 29, 2001.

## II.

The standard of review in a habeas case such as this is well-established.  As we have previously explained,

> [t]he Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) places new restrictions on a district court's power to grant writs of habeas corpus to state prisoners.  Under 28 U.S.C. § 2254(d)(1), a district court may issue the writ only where a state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

-7-

> indistinguishable facts." <u>Williams</u> v. <u>Taylor</u>, 529
> U.S. 362, 413, 120   S. Ct. 1495, 1523, 146 L.
> Ed. 2d 389 (2000).
>
> Under the "unreasonable application" clause, a
> writ may issue "if the state court identifies the
> correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably
> applies that principle to the facts of the
> prisoner's case." <u>Id.</u>  We review a federal
> district court's legal conclusions in a habeas
> proceeding de novo. <u>Simpson</u> v. <u>Matesanz</u>, 175
> F.3d 200, 205 (1st Cir. 1999).

<u>Johnson</u> v. <u>Norton</u>, 249 F.3d 20, 25-26 (1st Cir. 2001).[2]

Petitioner relies on <u>Brookhart</u> v. <u>Janis</u>, 384 U.S. 1 (1966), in support of his argument that the trial court did not adequately advise him of his constitutional rights before accepting what was essentially a guilty plea.[3]  The question in <u>Brookhart</u>, as framed by the

---

[2]  It is undisputed that the provisions of AEDPA control in Petitioner's case.  Furthermore, we note that this petition implicates only 28 U.S.C. § 2254(d)(1), as the constitutional sufficiency of the state court proceedings is a pure legal question.   Therefore, we need not address 28 U.S.C. § 2254(d)(2), which allows for habeas relief when the lower court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

[3]  In the hopes of buttressing his argument, Petitioner also cites cases from this court, most notably <u>Bonilla-Romero</u> v. <u>United States</u>, 933 F.2d 86 (1st Cir. 1991), and <u>United States</u> v. <u>Lyons</u>, 898 F.2d 210, 216 (1st Cir. 1990).  The Supreme Court has made clear, however, that AEDPA precludes federal courts from disturbing state court judgments by relying on precedents created by federal courts of appeals. <u>See</u> <u>Williams</u> v. <u>Taylor</u>, 529 U.S. 362, 381 (2000) ("AEDPA has added, immediately following the 'clearly established law' requirement, a clause limiting the area of relevant law to that 'determined by the

Supreme Court, is "whether counsel has power to enter a plea which is inconsistent with his client's expressed desire and thereby waive his client's constitutional right to plead not guilty and have a trial in which he can confront and cross-examine the witnesses against him." Id. at 7. Brookhart, like this case, involved a stipulated facts trial, also known as a "prima facie case." Petitioner maintains that once the trial court learned that Petitioner was asking his counsel about "any other evidence" in the case, it should have ascertained that Petitioner was not, in fact, consenting to a stipulated evidence trial. Therefore, Petitioner argues, this case is indistinguishable from Brookhart, and he is entitled to habeas relief.

The Massachusetts Appeals Court, however, determined that the record did not bear the weight of Petitioner's argument, citing the "specific inquiry by the trial judge of the defendant ascertaining that he understood he was not admitting to the truth of the proffered evidence by the Commonwealth and understood what he was doing."

---

Supreme Court of the United States.' If this Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar.") (internal citations omitted). The district court found Brookhart to be wholly inapposite, see Almanzar v. Maloney, No. 99-12444-RCL, slip op. at n.4 (D. Mass. May 29, 2001), but reviewed cases from this and other circuits in an effort to give full consideration to Petitioner's claim, see id. at 6-9. Because the district court reached the proper conclusion notwithstanding, its failure to rely solely on Supreme Court precedent is inconsequential.

-9-

Commonwealth v. Almanzar, No. 97-P-815, slip op. at 1-2 (Mass. App. Ct. Dec. 18, 1998) (hereinafter "Slip Opinion").[4]  In Brookhart, on the other hand, the Court found that "the record show[ed] . . . that [the] petitioner himself did not intelligently and knowingly agree to be tried in a proceeding which was the equivalent of a guilty plea . . . ." Brookhart, 384 U.S. at 7.  Furthermore, unlike Brookhart, where the defendant and his attorney were clearly at odds with each other, in this case Petitioner and his counsel were at all time in agreement about going forward with a stipulated facts trial.

We share the concerns of the Massachusetts Appeals Court about stipulated evidence trials;[5] nonetheless, we find that the state court's ruling was not an unreasonable application of Brookhart.  The trial court made painstaking efforts to ensure that Petitioner was aware of the nature and consequences of his decision to proceed with a stipulated evidence trial, and of the rights that he would be forfeiting by doing so.  The trial court reiterated on numerous occasions, and Petitioner insisted that he understood that he was not

---

[4]  Pursuant to Mass. R. App. Practice 1:28, the Massachusetts Appeals Court filed a Memorandum and Order providing a brief statement of the reasons for its summary denial of Almanzar's appeal.

[5]  See Slip Opinion at 1 ("we have repeatedly stated that the procedure employed in this case should be avoided because it invites hairsplitting appeals") (citing Commonwealth v. Abrams, 44 Mass. App. Ct. 584, 589 (1998)).

pleading guilty.  After Petitioner spoke to his attorney in private, the court once again asked whether he was comfortable continuing with the proceedings.  Counsel attempts to read ambiguity and ambivalence into the record where none exists.  The fact remains that when the trial court asked Petitioner if there was anything about the proceedings that he did not understand, he said "No, everything is all right."  Therefore, on this record, we find no basis for concluding that the state court's determination was an unreasonable application of the Supreme Court's decision in <u>Brookhart</u>.

## III.

Finding no error with the district court's denial of the writ of habeas corpus, we affirm.