COMMONWEALTH *vs.* KEVIN O'BRIEN

No. 90-P-1066.

Plymouth. May 14, 1991. - June 28, 1991.

Present: WARNER, C.J., FINE, & JACOBS, JJ.

*Constitutional Law*, Search and seizure. *Search and Seizure*, Affidavit, Probable cause. *Probable Cause.*

Where information set forth in an affidavit in support of an application for a search warrant did not demonstrate the unnamed informant's basis of knowledge or provide sufficient independent verification of the inform- ant's assertions through police investigation, the affidavit failed to es- tablish probable cause for the issuance of the search warrant. [809-812]


INDICTMENTS found and returned in the Superior Court Department on February 23, 1988.

A pretrial motion to suppress evidence was heard by *Su- zanne V. DelVecchio*, J., and the cases were tried before *George N. Hurd, Jr.*, J.

*Benjamin H. Keehn*, Committee for Public Counsel Ser- vices, for the defendant.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

WARNER, C.J. Evidence seized during a search pursuant to a warrant led to the defendant's indictment for possession of cocaine with intent to distribute (G. L. c. 94C, § 32A) and false impersonation to obtain a driver's license (G. L. c. 90, § 24B). The defendant moved to suppress the evidence. His motion was denied, and, after a jury trial in the Superior Court, he was convicted on both charges.[1] The threshold

---

[1]The indictment for false impersonation to obtain a driver's license was placed on file with the defendant's consent. "Ordinarily, we do not con- sider appeals from indictments placed on file, *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975), but in the interest of efficiency and in a suita-

(and dispositive) issue is whether the information contained in the affidavit supporting the application for the search warrant provided probable cause for issuing the warrant.

Plymouth police officer William E. Curtis prepared the affidavit. In it, he provided the following information concerning an alleged motor vehicle theft ring. On December 17, 1987, an unidentified informant, "whose information has led to court convictions in the past," told Officer Curtis that a Michael Ostrander had been involved in the larceny of two Ford pickup trucks in New Bedford on December 15, 1987. New Bedford police verified that two Ford pickups had been stolen, one yellow, Massachusetts registration 325-070, and one red, Massachusetts registration A/L 62601. Ostrander was arrested at 34 Colonial Terrace in Plymouth several days later on various outstanding warrants. The stolen red pickup truck was located outside his apartment and he was charged with its theft.

A day or so after Ostrander's arrest, Officer Curtis again spoke to the unnamed informant. The informant told Curtis that he believed that the second stolen pickup truck, yellow with a white cap, was located behind a gray apartment building at 189 Standish Avenue in Plymouth. A person named Ralph, who lived in a first floor apartment at that address, had "gotten" the truck from Ostrander. The informant further stated that "Ralph" drove a black Oldsmobile Toronado automobile with Rhode Island registration plates. The informant "thought" the Toronado was also stolen.

That day, Officer Curtis went to the Standish Avenue address. He saw a yellow Ford pickup with a yellow cap behind the building. In front of the building stood a black Oldsmobile Toronado with Rhode Island plates. The Oldsmobile was listed to Mark A. Boyden, of 14 Eddy Street, Providence, Rhode Island. At the time Ostrander was arrested, he had in

---

ble case we may choose to do so. See *Commonwealth* v. *Bianco*, 388 Mass. 358, 364-365 (1983)." *Commonwealth* v. *Chappee*, 397 Mass. 508, 523 (1986). Here, the filed indictment may appropriately be considered because the defendant's claim that the search warrant was invalid applies to both indictments. See *Commonwealth* v. *Doe*, 8 Mass. App. Ct. 297, 298 n. 1 (1979), and cases cited.

his possession a false Maine driver's license bearing the name Charles Mariacher. Seized from Ostrander's apartment was a set of license plates traced to Charles Mariacher of 44 Eddy Street, Providence, Rhode Island. In Officer Curtis's "opinion" Ostrander and "Ralph" were involved in the theft and "probably" the resale of motor vehicles.

On the basis of this information, Officer Curtis obtained a warrant to search the black Oldsmobile Toronado, the yellow Ford pickup truck, and the first floor apartment at the left side of 189 Standish Avenue for motor vehicle titles, registration plates, and "any other contraband."

"Under art. 14 of the Massachusetts Declaration of Rights a search warrant must be supported by probable cause. *Commonwealth* v. *Upton*, 394 Mass. 363, 370 (1985). . . . In *Upton*, [the Supreme Judicial Court] set forth the standard for determining whether information received from an unidentified informant is sufficiently reliable to give rise to probable cause under art. 14. *Id.* at 373. The *Upton* court stated: '[I]f an affidavit is based on information from an unknown informant, the magistrate must "be informed of (1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was 'credible' or his information 'reliable' (the veracity test). . . . If the informant's tip does not satisfy each aspect of the . . . test, other allegations in the affidavit that corroborate the information could support a finding of probable cause. . . .'" (Citations omitted.) *Id.* at 374-375. This continues to be the law in this Commonwealth and provides the standard under which this case must be decided." *Commonwealth* v. *Lapine*, 410 Mass. 38, 40-41 (1991) (footnote omitted).

Here, the supporting affidavit presented none of the circumstances underlying the unnamed informant's assertions and thus did not fulfil the "basis of knowledge" prong of the test. Nor did the police officer's investigation following his conversation with the informant provide sufficient indepen-

dent verification to remedy that deficiency. As a result, the affidavit failed to establish probable cause to issue the search warrant, see *Commonwealth* v. *Bottari*, 395 Mass. 777, 783 (1985), and the motion to suppress should have been allowed.

The informant's tip purporting to link "Ralph" to criminal activity and to the premises to be searched, consisted of the following: 1) "Ralph" somehow acquired the stolen yellow pickup truck from Ostrander; 2) the truck was located behind the Standish Avenue apartment building; 3) "Ralph" drove a black Oldsmobile Toronado automobile with Rhode Island registration plates "thought" by the informant to be stolen; and 4) "Ralph" lived in a first floor apartment on the left in the Standish Avenue building. The tip thus was made up of primarily conclusory statements that could have been based on "casual rumor" and speculation. *Commonwealth* v. *Kaufman*, 381 Mass. 301, 302-303 (1980). There is no explanation of how the informant acquired the information that "Ralph" acquired the stolen pickup truck from Ostrander, or of the basis for the informant's belief that the black Oldsmobile Toronado had been stolen. See *Commonwealth* v. *Allen*, 406 Mass. 575, 578 (1990) (Unnamed informants' information based on hearsay from third parties whose reliability was not established fails the "basis of knowledge" test). Contrast *Commonwealth* v. *Cast*, 407 Mass. 891, 896-897 (1990) (An unnamed informant's tip contained sufficient detail about the defendant's appearance, background, and behavior to permit the inference that his information was based on personal observation); *Commonwealth* v. *DiAntonio*, 8 Mass. App. Ct. 434, 438-439 (1979) (A confidential informant's statements indicated that he had direct knowledge of the criminal activity, "based on personal observation and contacts which went materially beyond 'a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation' "). Nor does the affidavit present any basis for the informant's assertion that "Ralph" lived in the Standish Street apartment. Contrast *Commonwealth* v. *Burt*, 393 Mass. 703, 716 n. 10 (1985) (Observations of defendants entering residences to be searched, and

the fact that their vehicles were registered at the residences, provided probable cause to believe that the defendants resided at those premises).

Except for the connection between Ostrander and the stolen red pickup truck, the informant's claims are either insufficiently corroborated or uncorroborated by other allegations in the affidavit. The yellow pickup truck that Officer Curtis saw at the Standish Avenue address did not fit the informant's description of the stolen pickup truck. The former had a yellow cap, the latter a white cap. Although the affidavit gives a registration number for the stolen yellow pickup truck, it provides no registration for the pickup truck Officer Curtis saw and there is no further information to support the conclusion that it was in fact the truck stolen in New Bedford. Contrast *Commonwealth* v. *Baldwin*, 11 Mass. App. Ct. 386, 391-392 (1981). Likewise, the information provided by Officer Curtis concerning the ownership of the Oldsmobile Toronado fails to verify the informant's claim that the automobile was stolen. No independent information supports the informant's assertion that "Ralph" lived in the Standish Avenue apartment. Finally, the fact that license plates traced to an address at 14 Eddy Street, in Providence, Rhode Island, were found at Ostrander's apartment, while the Oldsmobile Toronado was listed as belonging to a person living at a different Eddy Street address, does not assist in reaching a conclusion that stolen goods were likely to be found in the Standish Avenue apartment in Plymouth. See *Commonwealth* v. *Kaufman*, 381 Mass. at 303-305. Contrast *Commonwealth* v. *Burt*, *supra* at 711-715; *Commonwealth* v. *Cast*, *supra* at 897-898.

Because the affidavit supporting the search warrant did not contain any solid information linking "Ralph" either to criminal activity or to the Standish Avenue apartment, it did not provide a sufficient basis for concluding that stolen property could "reasonably . . . be expected to be located" in that apartment. *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). See *Commonwealth* v.

*Wright*, 15 Mass. App. Ct. 245, 250-251 (1983). Compare *Commonwealth* v. *Saleh*, 396 Mass. 406, 409-412 (1985); *Commonwealth* v. *Pratt*, 407 Mass. 647, 661-662 (1990).

As the evidence seized during the search constituted the entire basis for the defendant's convictions, the judgments are reversed, the verdicts are set aside, and the case is remanded to the Superior Court for the entry of findings of not guilty. See *Commonwealth* v. *Funches*, 379 Mass. 283, 296-297 (1979). Contrast *Commonwealth* v. *Taylor*, 383 Mass. 272, 283-285 (1985).

*So ordered.*